All rise. Hear ye, hear ye, hear ye. This Honorable Appellate Court of the 2nd District is now open. Pursuant to adjournment, the Honorable Robert D. McClendon presiding. Please be seated. Your Honor, this is the first case of the morning. Call 212-0242 Paul Dunklau v. County of DuPage. On behalf of the At-Large, Joshua Bedwell. On behalf of the At-Rig, Ms. Nancy Wolf. Mr. Bedwell. Mr. Bedwell. Good morning, Your Honor. Good morning. May it please the Court. It will. Your Honor, we are all aware of the law of horrors confiscation. The law of horrors forfeiture. What we have here is a forfeiture exercised by a county entity. And that's why we're here. We've made constitutional arguments against that. We've made factual arguments against that. Which I believe should have been sustained by the trial court. Unfortunately, Judge Souter chose in his mind to equate the conduct of this person as a felony. It wasn't a felony. It was a misdemeanor. Besides, the county itself failed to follow its own rules or the rules of the state. You proceeded under the Wage Act, correct? That is correct, Your Honor. Must there be an agreement in place, either an implied agreement or an actual agreement in place in order to proceed under the Wage Act? That is correct, Your Honor. All right. And Judge Souter, I believe, found that there was no agreement, correct? That is correct. What's the standard of review for us on that finding? In this case, Your Honor, it is appropriate for this Court to review this case to NOPA. The issues raised in this case are ones of law. The one raised by Justice Burke is to whether or not an agreement actually exists for the purposes of the Illinois Wage Payment and Collection Act. That is a determination of law, and that issue should be reviewed to NOPA. Well, are you then saying that there was an agreement in the contract? Yes, Your Honor, there was an agreement. The DuPage County Employee Retention Benefit Program constitutes an agreement. Even though it says it isn't? The specific language of the policies that are set forth by the DuPage County does state that it is not a contract. It says it's not an agreement either, doesn't it? Your Honor, I don't recall that being the specific language. But the unequivocal promise of an employer to pay an employee is the very heart of what makes up an agreement. I'm just a little confused about why this is de novo, though. I mean, the Court reviewed the plan just as you reviewed the plan. The Court listened to the testimony of the witnesses, including your client, who testified there was an agreement. He was not operating under an agreement or employed under an agreement. Why would that be de novo review when the Court made what appears to be perhaps a factual finding as to whether there's agreement based upon the evidence? Well, the determination that there was no agreement was, in fact, an error of law because the agreement existed. The trial court made the decision that there wasn't an agreement and then went on to make the decision that Paul was involuntarily terminated from his employment. Well, that's the other issue. The issue now will be the threshold issue. If there's no agreement, you're done, right? Correct, Your Honor. Okay. So let's stay on the agreement. Again, I'm trying to get my head around the idea that the Court makes what appears to me to be a factual finding. Maybe I'm wrong. And you're saying it's a finding of law based upon the facts. It is my position that the existence of an agreement, whether or not the parties had an agreement, an employment agreement, is a determination to be made by the Court as a matter of law. And that issue should be reviewed de novo. Well, even if that's the case, with your client saying he didn't have a contract and he didn't have an agreement and the handbook stating in the overview this is not intended to constitute an employment contract or agreement, what was the Court to do, say you're both wrong? The DuPage County Employee Retention Benefit Program does constitute an agreement, whether it states that it doesn't or not. It is an unequivocal promise that the county will pay to an employee who participates for a continuous number of years, that they will pay those retention benefits upon the voluntary separation of that employee from his employment with the county, unless he is involuntarily terminated. So we shouldn't care what, I mean, this is the problem we're faced with. Your client says he didn't have an agreement or a contract, and the agreement, the document says it's not an agreement and it's not a contract, and it further says it's a guideline for day-to-day policies, assuming to be done by, you know, to be enforced by DuPage County or whatever entity does that work. So were to disregard all of those things and say all of those things are wrong? No, Your Honor, that is not what we are asking the Court to determine today. If we take that approach and we say that the retention benefits are not an agreement for an unequivocal promise by the county to pay an employee who satisfies those requirements of the continuous years of service, then we would also look at that section of the personnel policies that says that they are entitled to vacation days and they are entitled to sick days and the calculation of those days. Well, that's more, that's statutory, though, in addition. I mean, pursuant to this statute in question, you're entitled to those things. The document that DuPage County is administering simply adopted those, correct? I mean, the Wage and Payment Act requires that unused sick days and vacation time be paid, correct? That is correct. It doesn't require that retention benefits or whatever this is classified to be paid. I believe that is inaccurate, Your Honor. It does require the payment of earned compensation, and it does reference that as other compensation and final compensation owed to an employee that must be paid. And if it is not paid, it is subject to claims under the Illinois Wage Payment and Collection Act. Does the employee pay into this as well, this retention program? Or is this strictly funded by the employer? The Employee Retention Benefit Program, it is my understanding that it is funded strictly by the county. However, the employee who is participating in this program is encouraged to work for the continuous number of years and is incented for them for their longevity and to continue to stay with the county. The effect of taking that away would allow the county to dangle a carrot in front of the employee's mouth only to yank it away at the end when they've earned those benefits and it's earned compensation. Your client testified that he did not have an agreement with the county or did not have a contract with the county. Are you aware of that? I'm aware of that, Your Honor. Would you explain how your client could be so misinformed? Sheriff's deputies are public employees. So by the very nature of their employment and their employer being a state actor, they have a property interest in their employment. Regardless of whether Mr. Dunklaw believes it was a contract or states it was a contract or an agreement, he has a property interest right in that employment as a sheriff's deputy. In addition, DuPage County has set forth in a written policy an agreement to unequivocally pay retention benefits if the employee reaches certain milestones. In a sense, they earn compensation in the form of days to be paid in dollars for, I believe it's in five-year increments. As such, whether Mr. Dunklaw misspoke or stated that he did not have an agreement or that there was not a contract, by the very nature of his status as a public employee when he was a sheriff's deputy, he did, in fact, have a property interest in his employment and a property interest in those retention benefits. In the waiver section of the alleged contract, the county reserved, quote, the right to vary these policies to meet individual needs, unquote. How do you deal with that clause? Your Honor, the terms of the written policy state that an employee who worked for a continuous period of time, more than 22 years, and voluntarily separates his employment, whether he was a sheriff's deputy or as another county employee, is entitled and shall be paid his retention benefits upon the voluntary separation unless he is involuntarily terminated. This is a contract case. Nothing is more basic in the trial of a contract claim than the rights and the duties of the parties to the agreement. The rights and the duties of the parties to the agreement are defined and controlled by the specific contract or agreement that is set forth. Here, the county asks to exclude the very starting point, the agreement between the county and the county employees who are participating in this retention benefit program. Well, let's get back to standard of review, if we could. Justice Hutchinson and myself have cited to you several clauses that, if they were facts, would indicate that there is no contract nor any agreement, which, if, as a question of law and a noble review, we could determine that the judgment should be affirmed. But it's your contention that these factual statements, these statements that exist, as a matter of fact, should be deemed, interpreted as a question of law and, therefore, a noble. Why aren't they to be interpreted as mixed questions of law and fact, and the standard of review be manifestly erroneous? Your Honor, it is my position that the terms of the contract should be viewed as that, terms of the contract. And they should be reviewed de noble because the court finding that they are facts and allowing the county to retroactively change terms to the agreement that they entered into and the promises that they made to a county employee would, in effect, allow them to get the contract and change the terms of the contract, making the contract or the agreement, in this case, ineffectual. Well, you said that your client, I think, worked for the county for 22 years.  Where in the contract will you find that statement? And where in the contract will you find a statement that unequivocally anybody who works for 22 years is entitled to all the things that you're claiming? The employee retention benefit policy is governed by a specific section in the agreement. And that agreement sets forth and outlines the eligibility requirements for employees, for county employees who are eligible for the plan. The county does not dispute that Paul Dunklow was eligible for the plan, thereby, in effect, admitting that an agreement exists. Well, you said eligible, and being eligible doesn't mean you're necessarily entitled. The section that discusses the employee retention program goes on to explain that when an eligible employee reaches certain milestones, in this case, 20-plus years of service, regardless of age, I believe is the language that it states, then that employee, upon his voluntary separation from the employment, shall be paid his retention benefits that he's earned over time. Well, where does it say that those benefits were earned in the employee retention program? Because that's been a hot topic in a lot of employment cases, earned versus unearned, but earned. Where does it say in 3.11 that these retention incentives are earned? The specific language of the written policy does not directly state that these are earned benefits. It does state that upon voluntary separation, an employee who has met the eligibility requirements for time worked shall be paid, and those shall be paid upon voluntary separation. I will also note for the Court that the sections governing the sick days and the vacation days don't say that those days and that time is earned either. However, in this case, DuPage County paid those accrued benefits. The Illinois Wage and Payment Act, though, calls them earned. There's a difference. I mean, they're required to be paid pursuant to the state law, not the company policy, as we'll call it, the DuPage County policy. They've adopted it, but it's not required under this. But I'm just still looking for the language that makes this an entitlement or an earned. It talks about applicable days will be made. There are exceptions. There are calculations. But, okay, I just don't see the language that says shall be paid, will be, are earned. I will also note, for Your Honor, on the second page of the agreement that you're referring to there, it states that they shall be calculated like sick and vacation days. It says they will be calculated. It doesn't say shall. There's a difference. I will also note that the Illinois Wage, Payment, and Collection Act, while it refers specifically to vacation and sick days, does also refer to other compensation. And it is our position that the retention benefits, in this case, would do qualify as other compensation and, therefore, are subject to the claims under the Illinois Wage, Payment, and Collection Act. The written policy of the agreement states that an employee with 20-plus years will be paid his retention benefits upon voluntary separation unless he is involuntarily separated. Thus, the operative question is whether Paul was involuntarily terminated under the terms of the agreement. While the Employee Retention Benefit Program doesn't specifically address termination of a sheriff's deputy, we know that a sheriff's deputy is a public employee and has a property interest in his employment. Could the sheriff have refused the resignation, not accepted? That is correct, Your Honor. He could have refused, and it is our position that if he intended to seek involuntary termination of Paul's employment as a sheriff's deputy, he could, in fact, have refused that voluntary resignation. Rather, they affirmatively accepted that voluntary resignation with their own form and memorialized the voluntary retirement, calculated all of his benefits, including the retention benefits. I will also note that that acceptance was not something that they were required to do. Their own form was equipped to reject the voluntary resignation. Any other questions? No, thank you. Thank you. You'll have a chance to make your comment. Thank you, Your Honor. Good morning, Justices. Good morning. If it pleases the Court, thank you for the opportunity to be able to address any of your questions. One of the issues I wanted to initially address is the standard of review. As we indicated, the county indicated in the brief, it's our position clearly that the standard is whether the court's determination was contrary to the manifest weight of the evidence. And that's because it's our position, the matter went to bench trial, cross motions for summary judgment were denied specifically for the reason that Judge Souter, I believe it was Judge Elsner at the time, had noted that there were inferences to be made from facts that required an evidentiary hearing. That evidentiary hearing was conducted. The court made determinations based on that evidence. And there should be no doubt that this court's standard should be whether those determinations are contrary to the manifest weight of the evidence and clearly erroneous. If the county hadn't paid this officer the sick time or pay or vacation time, would he have had any recourse under the law at all? Because there's no agreement, if there's no agreement, he wouldn't be able to file under the Wage Act or he wouldn't be able to file breach of contract. What would be done if he wouldn't have been able to collect? I believe that's where the remedy of the Illinois Wage and Payment Act provides to any employee. That if you don't get your pay, the amount that you are to earn because of the work that you put in, then you can go to seek redress. And not only to get that money back, but I think that they put the punitive element in that you have to pay interest and attorney fees. But we're not talking about that. I don't think that that's, if anything, and it's always a murky, slippery slope, as you will, whether there's an employment agreement or not. But certainly, I would think for purposes of getting paid for the work that you have done, the hours you put in, there is an implied contract, I think at best, that even though there is no employment contract or any other kind of agreement, when you shook hands or when you were hired and said you were going to get paid $13 an hour, if you worked an hour, you should get the $13. So I think that, in and of itself, should provide an employee with a remedy when they don't get that compensation. And that's certainly one of the disputed facts that called for this court to review it by manifest weight of the evidence, rather than a de novo review. Several disputed facts. Was he involuntarily terminated by the sheriff's order that he be placed on administrative leave? I think there was some argument at the trial and in the briefs that this separation form, which removed an individual from the payroll, whether that was an acknowledgment that there was a voluntary separation and that we're stopped from arguing anything different. Is it a question of fact as to whether or not these retention benefits are, quote, other compensation? I believe it is a question of fact, and that's where the plaintiff failed at the trial court and can't sustain anything before this court to establish that it was compensation under the act. I think he failed, and I think that was certainly implied indirectly, if not directly, by the ruling after the bench trial, is that there was no employment agreement. There was no contractual obligation which would support a claim for unpaid compensation under the Illinois Wage and Payment Act. How does a sheriff's deputy get terminated, or how is he terminated? Under Illinois law, in the Sheriff's Act, there's a merit commission, and the sheriff has some authority up to 30 days of discipline, unpaid suspension. But beyond that, if he seeks any discipline, including termination, then he has to file written charges before the merit commission. What happened in this case is that Paul Dunklow thwarted that process by suggesting some weeks after he was placed on administrative leave, stripped of all his police powers, he said, oh, wait a minute, I'm going to retire, therefore making him ostensibly eligible for this benefit. Again, not compensation. There's no evidence to support any argument that the plaintiff could make that this retention benefit offered by the County of DuPage is wages or other earned amount that must be paid. Could the sheriff have thwarted his process? Could the sheriff have thwarted his intent to retire and avoid all this stuff? It could be, but as I argued at the trial court, if the sheriff didn't accept that resignation and chose to proceed with termination, the ultimate relief the sheriff would be seeking would be to separate Paul from his employment. He did it. There was no need for the sheriff to proceed with charges. The employment, the relationship as deputy sheriff was terminated when Paul Dunklow submitted that letter of resignation. He could have, arguably, he could have, but why go through that when the ultimate remedy would be to not have him act as a deputy sheriff? When the sheriff suspended Paul Dunklow, could he have, could Paul appeal that or pursue that beyond, or is that not an appealable? He was placed on administrative leave with pay, so there wasn't anything. And certainly his police powers are derivative from the sheriff's. So the sheriff said, I'll continue to pay you, but I do not want you out in the street acting as my alter ego, as my deputy sheriff, under these circumstances. And I think that that's what it was. It wasn't a discipline. It was, I no longer have a confidence, authority in your acting as deputy sheriff, so I'm going to take that power away from you. Is there a difference between a retirement and a resignation? Because I think the letter that was written, well, actually, the line that was written is I retire as opposed to I resign. I think that ultimately, whether you're separated from your employment, no, there would be no difference between retirement and resignation. It is curious in my mind, and I think it was argued, why Paul Dunklow issued a letter that said effective May 3rd, I retire. And as was pointed out in the trial court, he wasn't eligible for retirement benefits at that time. He wasn't old enough. Why he did it instead of resigning, I don't know, but I don't think that it's material or relevant for the determination that the trial court made. And that doesn't form a basis for this court to find that the trial court's ruling was clearly erroneous. So we would ask, as we had argued- If a county employee is told, resign or we will fire you, is that a voluntary or an involuntary resignation? That would be an interesting question. I would argue on behalf of the county that if that were made, that it would have been an involuntary termination. And I would support the county's decision not to give the retention benefit under that. Well, then why didn't they just fire her? They can't. The sheriff cannot. No, I said an employee. I didn't say a deputy. It was a sneaky- Question. Well, it wasn't a sneaky question. It was a sneaky designation. I should have said a non-merit commissioned employee. I understand what you're saying, Judge. The point being that if you give a party an option, it seems that if they take the option, then you should be, or the county should be, stopped from claiming that he was fired when he was given the opportunity to resign, and he did. So it's one thing to say that something's involuntary. It's another thing to say that it was done under duress. And would you like to comment about any distinction between duress and involuntary or not? I can't disagree with your analysis, Justice McClaren, but that's not, there were no facts to support that. Nobody ever told Paul Dunklow, if you retire, if you resign, then this may or may not happen. There was nothing of that, no suggestion, no evidence in the record, and I believe that Paul Dunklow's testimony at trial was that he decided on his own, for personal and family reasons, to move on with his life, I think was his actual testimony at trial. So, again, to your point, I cannot disagree with it, but there is no evidence to support that Paul Dunklow submitted that letter under any form of duress. So your argument on involuntariness, then, is that the termination process began with the involuntary leave. The trial court found that the administrative leave, taking away all police powers, was an effective involuntary termination. And that preceded the letter of retirement issued by the plaintiff. Could he have, I mean, he could have stayed on administrative leave with pay until he died, if he wanted to. Well, I think that at some point that, and I think that the evidence supports why the sheriff didn't run to the Merit Commission when this incident first came to his light and the investigation begun. As you all know, it's a longer process for an investigation of serious criminal matters, and this was just at the beginning. But it was significant enough that the sheriff said, I don't have any more confidence. That was the trial court's determination that that order, that administrative leave order, was an effective involuntary discharge. And, again, it's our position that that was not clearly erroneous. It is supported by the record and the law, and this court should sustain that. But your argument here today is that an involuntary separation really is a firing, and that couldn't have been done under the circumstance that you've identified. No, I think we did say that it was, in fact, an involuntary termination. Therefore, Paul Dunclow was ineligible for this retention benefit by the clear terms of the handbook policy. Therefore, it was in compensation. There's no employment agreement, and he's not entitled to that money now, wasn't entitled to it then, and he's certainly not entitled to interest and attorney fees. There's certainly a legitimate issue that we had from the very beginning, which continues up to now, and we should never have to pay attorney fees and interest on the amount. In this case, where there's really a dispute at the trial court as to whether there was involuntary termination, making him ineligible. I know there was an argument made by the plaintiff that we said that he forfeited it, but I think our argument is really that he was ineligible by the clear terms of the handbook provision. Has the policy manual been amended since this case? Yes, actually it has. Are you saying you really, really mean it when we say there's no agreement? Well, it's been amended in a couple respects. When it was enacted, I believe in the mid-1990s, it was in place. In 2002, the county undertook to say it doesn't apply to any employee that was hired after 2002, and they also amended it to say if you're convicted of any crime, including a misdemeanor, you're not going to be eligible. For the retention benefit, you're talking about. For the retention benefit, exactly. But he doesn't fall in line with that. No, no, no. In your brief, you said a prerequisite to a wage claim act is that there be an agreement. Right. And then you said that if the county didn't pay him his sick time, let's say, that he earned an invalidly earned, that he could bring a wage claim act because under that there'd be an implied agreement under this manual that says it's not an agreement. Well, I think that it's under fairness if you work an hour and wages, hourly compensation, if an employer decides to give you sick or vacation time, that gets included. The law does not require that. If this retention payment, if we were to find that it was other compensation, wouldn't that basically fall under the same thing as, I mean, realistically, what I'm getting at is it doesn't really turn on whether this thing's an agreement or not an agreement because there's an implied agreement for the stuff that's in there that people earn, like sick time. Right. So if we found that this retention hours were actually compensation under the agreement that a person earns like sick time, then there is this implied agreement. And so it really turns on whether this is other compensation. Well, there's that. But the trial court found that there was no agreement for purposes of the Wage Payment Act, and it's our position that that finding was not clearly erroneous and should be supported. It's not against the manifest weight of the evidence. So I think that there's another component, too, that even if you were to make that determination, he's ineligible because he was, in fact, involuntarily terminated. Okay. Thank you. Is there anything else? Thank you very much. Mr. Bedwell. May it please the Court. The county touched on one point that I'd like to clarify for your honors. They stated that the March 21, 2007 administrative leave order was the start of Paul's involuntary separation. That is not correct. It is contrary to what the law says. The Illinois Sheriff's Merit Commission law states that the sheriff has the authority to put a certified person, and the sheriff's deputy is a certified person, on suspension for up to 30 days in a 12-month period. Longer than that, he's got to go to the Sheriff's Merit Commission Board, file written charges with the Sheriff's Merit Commission Board. So if the purpose was to truly separate your client from the county, they would have to proceed to discharge proceedings, correct? That is correct, Your Honor. In fact, Section 8013 of the Sheriff's Merit Commission law states that in order to demote, suspend, or remove a certified person, in this case a sheriff's deputy, there have to be written charges filed with the Merit Commission. And it doesn't make any difference that written charges may be filed elsewhere. It's the Merit Commission that causes the separation, so to speak. That is correct, Your Honor. At any time, the sheriff could have filed those written charges from the point when he put him on temporary administrative leave. In fact, if he were to have filed the written charges, he could have suspended him without pay and pending the decision from the Merit Commission. Instead, the sheriff elected not to do that. So presumably by operation of law, that administrative leave order would have expired on April 21, 2007. That was before Paul tendered his voluntary retirement. And still, the sheriff elected not to file written charges with the Merit Commission. Then on April 26, 2007, Paul Dunklop tendered his letter of resignation to the sheriff and to the county. Even upon notification from Paul that he was planning on voluntarily separating his employment, voluntarily retiring, the sheriff still did not file written charges with the Merit Commission. Instead, they elected to affirmatively accept that voluntary retirement and memorialize it with their own form, a form that was well-equipped to be able to reject that voluntary retirement. But if they accepted the voluntary retirement or this retirement, they couldn't ultimately say he was discharged because the only discharge can come from the Merit Commission, right? That is absolutely correct, Your Honor. The county's position is that the trial court's determination that the Employee Retention Benefit Program is not in agreement is that it's not clearly erroneous. It is our position that even if it is looked at by this court under a manifest way to the evidence standard, it is clearly erroneous. There clearly is an agreement. And I use the example of vacation pay. The vacation pay is provided for in the county policies outlining compensation and outlining other benefits that are provided to county employees. The fact of the matter is that you cannot get vacation pay if it's not part of the agreement. Here, it's outlined in the county policies that there's vacation pay and the county paid that. I think it might be more technically correct to say your client is not necessarily entitled to it. The fact that they gave it to you means that there is no contest. And so one doesn't necessarily follow the other. Because to my knowledge, there's nothing in the contract that connects the granting of one of these benefits with the determination that all other benefits are therefore also to be included. Do you understand what I just said? I do, Your Honor. I do understand what you just said. You looked at me. Maybe I'm misreading your incredulous look. I'm listening intently, Your Honor. It is my position that the retention benefits are, in fact, earned compensation. That earned compensation is reflected by how those benefits are calculated and when the employee, the county employee or the sheriff's deputy, is entitled to receive those benefits. They are awarded in increasing amounts based on a period of time. Every five years and then at 20 years, the maximum of the entitlement is 120 days. The very nature of the increase in the award illustrates that it is earned compensation because the longer the time the employee is there, the more that they are entitled to receive. You never raised a stop, did you? To the extent that there was an instance that you could cite where some other individual, not necessarily a deputy, but some other employee with the county was given benefits, even though they might have been allegedly involuntarily terminated or were given their entire benefits that is listed in the manual. Just in clarifying that, I realize that my time is up. May I answer the question? Sure. With regard to the estoppel argument, are you asking me if a previous action or withholding of entitlement or the retention benefits to a county employee has ever happened and that is, in fact, the estoppel argument? Yes. Okay. To my knowledge, there is not another employee that has been terminated and had their retention benefits withheld. There was evidence at trial and testimony from my client that he had not witnessed over his 22-year period or did not have knowledge of another sheriff's deputy who had been terminated by the Merit Commission, and presumably then each of the retiring sheriff's deputies had received their retention benefits if they were eligible for the program. Okay. And these were even those that were terminated by the Merit Commission? I believe that the evidence and the testimony from my client at trial was that there had not been someone that was terminated. There had not been a sheriff's deputy that was terminated by the Merit Commission. Okay. Thank you. Any other questions? We'll take a case under advisement. There will be a short recess. There's another case.